JOSEPH HAGE AARONSON LLC

485 LEXINGTON AVENUE

NEW YORK, NEW YORK 10017

(212) 407-1200

WWW.JHA.COM

GREGORY P. JOSEPH
DIRECT DIAL: (212) 407-1210
DIRECT FAX:  (212) 407-1280
EMAIL: gjoseph@jha.com

November 19, 2018

By ECF and By Fax
Hon. Naomi Reice Buchwald
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Courtroom 21A
New York, NY  10007-1312
Fax: (212) 805-7927

Re:  *Williams, et al. v. Equitable Acceptance Corp., et al.*, No. 18-cv-07537 (S.D.N.Y.)

Dear Judge Buchwald:

On behalf of Defendant Equitable Acceptance Corporation ("**EAC**"), this letter sets forth, pursuant to paragraph 2.E.1 of Your Honor's Individual Practices, a synopsis of the substantive arguments advanced in EAC's motion to dismiss the First and Second Causes of Action in the Class Action Complaint ("**Complaint**"), for alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), 18 U.S.C. §§ 1962(c) (Count I) & (d) (Count II).  Both claims are infirm, and should be dismissed.

Plaintiffs seek to represent a class of student loan borrowers and claim an allegedly "unlawful scheme to sell them purported 'student loan relief' services" by EAC and Defendants SLF Center, LLC ("**SLF**"), Integra Student Services, LLC ("**Integra**"), and 41 others (together, "**Dealers**") (¶¶1-2).  (All paragraph ("¶") references in this letter are to the Complaint.)

Plaintiffs claim they were fraudulently induced to pay the Dealers to obtain forgiveness of their student loans by the Dealers' claims they were affiliated with the U.S. Department of Education ("**DOE**")—but the first sentence of the Agreements Plaintiffs signed states:  "We [each Dealer] are a private company not affiliated with the Department of Education."

Plaintiffs also claim the Dealers fraudulently concealed that the services they provided were available free from the DOE or loan servicers, but the second sentence of the Agreements plaintiffs signed states: "You may, of course, try to complete your applications and consolidate your student loans or make changes to their repayment plans yourself without paying anyone a fee—the results could be the very same or they might vary."

SLF's and Integra's agreements with the Plaintiffs fully disclosed their services as private document-preparation firms.  Plaintiffs claim they were induced to finance the Dealers' services with credit from EAC by EAC's alleged concealment of the fact that contracts bearing the clear

JOSEPH HAGE AARONSON LLC

Hon. Naomi Reice Buchwald
November 19, 2018
Page 2

title "**Equitable Acceptance Revolving Credit Plan**" ("**Credit Agreements**") were in fact loans (¶¶4, 65). These Plaintiffs are college graduates. A credit plan is a loan.

### I.      No § 1962(c) RICO Claim (Claim I)

"To establish a civil RICO claim, a plaintiff must allege:  (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). Plaintiffs cannot plead predicate acts or pattern (continuity).

**No Predicate Acts.**  The alleged racketeering activity consists of Computer Fraud and Abuse Act ("**CFAA**") violations, 18 U.S.C. § 1030(g) (¶274), and mail/wire fraud, 18 U.S.C. §§ 1341 & 1343 (¶273). The former is not a RICO predicate act, and Plaintiffs do not plead the latter in compliance with Rule 9(b).

*CFAA*.  "The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1) . . . ." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Section 1961(1) "does not include violations of the CFAA, and thus they may not serve as predicate offenses." *Rickett v. Smith*, 2015 WL 3580500, at *4 (W.D. Ky. June 5, 2015).

*Mail/Wire Fraud*.  Plaintiffs' allegations of the Dealers' fraudulent misrepresentations and omissions are refuted by the Complaint and documents it incorporates or relies on. "[R]eliance on . . . alleged oral promises, which directly contradict the terms of . . . written agreements [is] unreasonable as a matter of law." *Morrissey v. Gen. Motors Corp.*, 21 F. App'x 70, 73 (2d Cir. 2001). The agreements Plaintiffs signed clearly disclose the terms of the transactions and financing they agreed to, including that:  (i) the services Plaintiffs purchased were document preparation services and not loan forgiveness; (ii) EAC and the Dealers have no government affiliation; (iii) the Credit Agreements, labeled "Equitable Acceptance Revolving Credit Plan," constituted a new line of credit; and (iv) Plaintiffs remained obligated to make their student loan payments. Plaintiffs' claims of RICO fraud are unfounded.

Nor were the Credit Agreements deceptive.  Plaintiffs claim the Credit Agreements "unlawfully omit[] numerous pieces of information that are mandated by law" (¶115; *see also* ¶116-21). But that law is the Truth in Lending Act ("**TILA**"), 15 U.S.C. §§ 1637(a)-(b), 1638(a). Even assuming, *arguendo*, that the Plaintiffs stated a TILA violation (this will be vigorously challenged), failure to comply with TILA is not a predicate act. *See, e.g., Zander v. ACE Mortg. Funding LLC*, 2012 WL 601896, at *4 (C.D. Cal. Feb. 23, 2012). Plaintiffs cannot criminalize TILA by transforming the disclosure requirements of TILA—which Congress decided are *not* be predicate acts—into acts of mail or wire fraud.

Plaintiffs also do not plead actual deception, much less any harm, from the omissions they allege. The Credit Agreements and billing statements that Plaintiffs received provided all material information concerning their loans, including:  (i) the "actual amount financed" (¶116);

JOSEPH HAGE AARONSON LLC

Hon. Naomi Reice Buchwald
November 19, 2018
Page 3

(ii) the "dollar amount of the finance charge" (¶117); (iii) the grace period (¶119); and (iv) the "due date of any payment" (¶120). All alleged omissions center on technical distinctions existing only in TILA, which do not independently state fraud. Furthermore, despite Plaintiffs' allegations to the contrary, the Credit Agreements were not "falsely present[ed] . . . as open-end when it is, in fact, closed-end" (¶¶291, 299) (this is another distinction that exists only in TILA and is not a predicate act). The Credit Agreements satisfy all of TILA's criteria for "open end credit plans"—they are each a plan (1) "under which the creditor reasonably contemplates repeated transactions;" (2) "which prescribes the terms of such transactions;" and (3) "which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." *See* 15 U.S.C. § 1602(j). The Credit Agreements are "Revolving Credit Plans" in name and substance. They provide that a Borrower's "future purchases" will be "debited against the line of credit that [EAC] may establish hereunder" and impose a "finance charge." The Credit Agreements and billing statements thus vitiate Plaintiffs' claims of deception.

**No Pattern of Racketeering.** Nor do Plaintiffs plead a pattern of racketeering—specifically, continuity. The Complaint does not plead either closed-ended continuity—a pattern of "related predicate acts extending over a substantial period of time" in the past—or open-ended continuity, "racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 183. Plaintiffs allege a pattern spanning at most 19 months, which is less than the two-year minimum for closed-ended continuity in this Circuit. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (this Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years.").

They also fail to plead open-ended continuity because a "sweeping allegation that defendants employed the same scheme in connection with [others] is insufficient to show open-ended continuity" without "factual allegations indicating that defendants engaged in fraud ... in a manner and by means similar to those alleged" by Plaintiffs. *Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 572 (W.D.N.Y. 2011). The Complaint fails to plead "racketeering acts" that (i) "themselves include a specific threat of repetition extending indefinitely into the future," or (ii) "can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes, such as an organized crime family." *Id.* at 571.

**II.    No RICO Conspiracy Claim (Claim II)**

Because the substantive § 1962(c) claim fails, the § 1962(d) claim for RICO conspiracy is doomed. *See, e.g., Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008).

Respectfully submitted,

Gregory P. Joseph

Cc:    All counsel of record (by ECF)