**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
VANESSA WILLIAMS and KORY TURNER,
individually and on behalf of all persons similarly
situated,                                                        18 Civ. 07537 (NRB)

                              Plaintiffs,           **Oral Argument Requested**

                  vs.

EQUITABLE ACCEPTANCE CORPORATION,
SLF CENTER, LLC, INTEGRA STUDENT
SOLUTIONS, LLC, and DOES 1-41,

                              Defendants.
----------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF EQUITABLE ACCEPTANCE CORPORATION'S**
**MOTION TO DISMISS THE RICO CLAIMS**
**IN THE AMENDED CLASS ACTION COMPLAINT**

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Sandra M. Lipsman
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, New York 10017
(212) 407-1200

*Counsel for Defendant Equitable*
*Acceptance Corporation*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ......................................................................................................................2

I.      PLAINTIFFS DO NOT PLEAD RICO PREDICATE ACTS OF FRAUD ..........................2

        A.      Plaintiffs Do Not Salvage Improperly Sourced Allegations......................2

        B.      There Is No Basis For Attributing Dealer Statements to EAC ...............3

        C.      Plaintiffs Do Not Plead EAC Misstatements or Omissions....................4

        D.      Allegations of "Devastating Harm" Are Irrelevant to RICO Claims ...................6

II.     DISCLOSURES IN THE AGREEMENTS COMPEL DISMISSAL .....................................7

III.    PLAINTIFFS DO NOT PLEAD RICO CONTINUITY ..................................................9

IV.     PLAINTIFFS DO NOT PLEAD A RICO CONSPIRACY ............................................10

CONCLUSION..................................................................................................................10

### TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alphas Co. of N.Y. Inc. v. Hunts Point Terminal Produce Coop., Inc.*,
 2017 WL 1929506 (S.D.N.Y. May 9, 2017) ...............................................................7 n.14

*Angermeir v. Cohen*,
 14 F. Supp. 3d 134 (S.D.N.Y. 2014)........................................................... 4 & n.6, 7 n.15

*Bascunan v. Elsaca*,
 874 F. 3d 806 (2d Cir. 2017)....................................................................................7 n.14

*Bridge v. Phoenix Bond & Indem. Co.*,
 553 U.S. 639 (2008)...............................................................................................1, 7, 8

*Brookhaven Town Conservative Comm. v. Walsh*,
 258 F. Supp. 3d 277 (E.D.N.Y. 2017) .............................................................................2

*Coleman v. Commonwealth Land Title Ins. Co.*,
 318 F.R.D. 275 (E.D. Pa. 2016)...............................................................................8 n.16

*D'Addario v. D'Addario*,
 2018 WL 3848501 (2d Cir. Aug. 14, 2018),
 *cert. denied*, 139 S. Ct. 1331 (2019) ........................................................................7 n.13

*DeFalco v. Bernas*,
 244 F.3d 286 (2d Cir. 2001).............................................................................................4

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
 20 F. Supp. 3d 451 (S.D.N.Y. 2014)................................................................................8

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010)............................................................2 n.3

*Goren v. New Vision Int'l., Inc.*,
 156 F.3d 721 (7th Cir. 1998) ...........................................................................................9

*Grimes v. Fremont Gen. Corp.*,
 785 F. Supp. 2d 269 (7th Cir. 1998) ..............................................................................10

*Higgins v. Farr Fin. Inc.*,
 2009 WL 3517597 (N.D. Cal. Oct. 26, 2009).................................................................9

*Hirsch v. City of New York*,
　　300 F. Supp. 3d 501 (S.D.N.Y. 2018)...............................................................3

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
　　795 F.3d 380 (3d Cir. 2015)...............................................................5 n.11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
　　218 F.R.D. 76 (S.D.N.Y. 2003) .......................................................................2

*In re Platinum & Palladium Commodities Litig.*,
　　828 F. Supp. 2d 588 (S.D.N.Y. 2011).......................................................2 n.3

*In re Sumitomo Copper Litig.*,
　　995 F. Supp. 451 (S.D.N.Y. 1998).....................................................................6

*Int'l Bhd. of Teamsters v. Carey*,
　　297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004),
　　*aff'd* 124 Fed. Appx. 41 (2d Cir. 2005) ........................................................10

*Ledford v. Rapid–American Corp.*,
　　1988 WL 3428 (S.D.N.Y. Jan. 8, 1988) .....................................................1 n.3

*M'Baye v. N. J. Sports Prod., Inc.*,
　　2007 WL 431881 (S.D.N.Y. Feb. 7, 2007).......................................................4

*Petri v. Gatlin*,
　　997 F. Supp. 956 (N.D. Ill. 1997) ...............................................................10 n.17

*Novak v. Kasaks*,
　　216 F.3d 300 (2d Cir. 2000)........................................................................2, 3

*Ray v. Spirit Airlines, Inc.*,
　　836 F.3d 1340 (11th Cir. 2016) ..............................................................8 n.16

*Ritchie v. N. Leasing Sys., Inc.*,
　　2016 WL 1241531 (S.D.N.Y. Mar. 28, 2016),
　　*aff'd sub nom. Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017)...............8 n.16

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
　　806 F.3d 71 (2d Cir. 2015)......................................................................8 n.16

*Schmuck v. United States*,
　　489 U.S. 705 (1989)..................................................................................6

*Silvester v. Selene Fin., LP*,
　　2019 WL 1316475 (S.D.N.Y. Mar. 21, 2019) .........................................4, 6, 7

*Sullivan v. Barclays PLC*,
  2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)........................................................................4

*United States v. Weaver*,
  860 F.3d 90 (2d Cir. 2017).................................................................................................9

*VNB Realty, Inc. v. Bank of Am. Corp.*,
  2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013)...................................................................3

*Williams v. Affinion Grp., LLC*,
  889 F.3d 116 (2d Cir. 2018)...............................................................................................6

*Williams v. Dow Chem. Co.*,
  255 F. Supp. 2d 219 (S.D.N.Y. 2003).........................................................................7 n.15

*WWE, Inc. v. Jakks Pac., Inc.*,
  530 F. Supp. 2d 486, 516 (S.D.N.Y. 2007),
  *aff'd*, 328 F. App'x 695 (2d Cir. 2009)............................................................................10

## Rules & Statutes

Rule 9(b) ................................................................................................................. passim

## PRELIMINARY STATEMENT[1]

In what can only be described as disingenuousness, Plaintiffs assert that the Agreements vitiating their RICO claims, which display their signatures, were manufactured by Defendants—even though <u>Plaintiffs themselves appended identical copies of two of them to the FAC</u> (FAC Exs. B, C) and <u>alleged receipt and signature</u> (¶¶161-76, 288-90, 331-332)—and claim that the Agreements are a primary source of fraud (¶¶162-203).  Plaintiffs now "do not concede that such Agreements were in fact sent to or electronically signed by Plaintiffs and reserve the right to take discovery on those issues."  (Opp. 8 n.4).  This is not merely implausible.  It is incredible.

Plaintiffs do not cure their failure to plead predicate acts of fraud with particularity.  The Opposition makes no effort to contend, factually, with EAC's showing that information allegedly "concealed" or "misrepresented" was in fact disclosed.  (Br. 11-20; Exs. A-D).  Nor do Plaintiffs dispute that allegations derived from unattributed statements, anonymous sources, and unadjudicated complaints—like the FAC's alleged oral misrepresentations—fail under Rule 9(b).  (Br. 21-22).  They dismiss truthful written disclosures as a fraudulent ploy,[2] repeat infirm allegations of oral misrepresentations at length (Opp. 2-13, 18-23), and offer specious rationales for attributing Dealers' statements to EAC.  (*Id.* 18-19).  All of these efforts fail.  (Pt. I, below).  The infirm allegations about non-plaintiff Borrowers also defeat continuity.  (Pt. III, below).

Plaintiffs ask the Court to disregard the Agreements entirely—most prominently in an argument, based on *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 661 (2008), that they need not show reliance on alleged misrepresentations.  (Opp. 14-15).  Plaintiffs do not acknowledge that even under *Bridge*, they cannot "prevail without showing that *someone* relied on the defendant's misrepresentations."  553 U.S. at 658 (emphasis in original).  Plaintiffs also miss the point that prominent, truthful disclosures demonstrate there was no fraudulent

---

[1]   All abbreviations and citation conventions used in EAC's opening brief ("**Br.**") are used again here.  Plaintiffs' Memorandum in Opposition to EAC's motion to dismiss the FAC [Dkt. 47] is "**Opposition**" or "**Opp.**"

[2]   *E.g.*, Opp. 12-13 (EAC "tries to hide behind the purported disclosures it inserted into the Borrower documents … just as it has done in this Motion"); *see* pp. 3-4 & n.5, below.

1

concealment.  And they argue from a patently false premise that the disclosures did not explicitly address the content of alleged oral misrepresentations and omissions.  (Opp. 15).  The disclosures compel dismissal.  (Pt. II, below).

## ARGUMENT

### I.   PLAINTIFFS DO NOT PLEAD RICO PREDICATE ACTS OF FRAUD

#### A.    Plaintiffs Do Not Salvage Improperly Sourced Allegations

In purporting to show particularity, Plaintiffs rely indiscriminately on allegations based on unattributed statements, anonymous sources, and unadjudicated complaints.  (Opp. 16, *id.* 2-13).  They do not address controlling law that such allegations fail under Rule 9(b).  (Br. 21-22). *See also Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 288  (E.D.N.Y. 2017) ("general contention" of "scheme to [defraud] the [plaintiff] and all similarly situated plaintiffs" is "the kind of conclusory allegation that Rule 9(b) is meant to dissuade").  Indeed, allegations about unadjudicated claims would fail to survive a motion to strike.  "Second Circuit case law makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) …."  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 79 (S.D.N.Y. 2003).[3]

Plaintiffs claim "there is no requirement that [confidential sources] be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."  (Opp. 17-18, quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)).  *Novak* addressed *evidence of fraud* from anonymous *informants*—not anonymous allegations that fraudulent statements were

---

[3]    *See also In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593–94 (S.D.N.Y. 2011) (a "CFTC Order includ[ing] certain factual findings, was the product of a settlement …, not an adjudication of … underlying issues ….  Plaintiffs are … prohibited from relying on the [it] to plead underlying facts of liability."); *Footbridge Ltd. v. Countrywide Home Loans, Inc.,* 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (granting motion to strike allegations "based on pleadings, settlements, and government investigations in other cases"); *Ledford v. Rapid–American Corp.,* 1988 WL 3428, at *1 (S.D.N.Y. Jan. 8, 1988) ("references in a complaint to proceedings which do not adjudicate underlying issues may be stricken").

made.  *Novak* is inapplicable to anonymous sources echoing Plaintiffs' own claims.[4]  Moreover, even in cases like *Novak*, "naked allegations" omitting "references to the confidential witnesses [and becoming] conclusory, generalized assertions … entitled to no weight when addressing the adequacy of pleadings … must be disregarded as argumentative rather than factual."  *VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013).

### B.    There Is No Basis For Attributing Dealer Statements to EAC

Plaintiffs argue that their "claims are based not only on EAC's *own* misstatements, but also on fraudulent misrepresentations made by Dealers."  (Opp. 18).  But Plaintiffs cannot deny that continuing obligations for their student loans, availability of free services elsewhere, absence of Dealer affiliation with the Government, and penalty-free cancellation of the Agreements—allegedly concealed by Dealers—were truthfully and prominently disclosed in writing.  (Br. 11-15).  Indeed, they concede as much in suggesting the Agreements were manufactured for purposes of litigation (Opp. 8 n.4), and in theorizing that truthful disclosures—including a "script" for Dealers' use in a recorded "verification" phone call (¶¶224-25)—somehow further fraud.[5]

They do not address EAC's showing that allegations of EAC "participat[ion] in [Dealer] misrepresentations and material omissions" are on rank information and belief, and thus insufficient under Rule 9(b).  (Br. 20-21).  *See also Hirsch v. City of New York*, 300 F. Supp. 3d 501, 516 (S.D.N.Y. 2018) ("matters peculiarly within [a defendant's] knowledge" may be pled "on information and belief," but this "exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations, especially in the context of RICO claims");

---

[4]    Plaintiffs offer no authority for the flimsy rationale that they sought to "protect" these putative plaintiffs from "searches of public court files."  (Opp. 18 n.11).  They claim "identities should be easily ascertainable by EAC from [its] own business records" (*id.*), but plead that such records encompass 60,000 members of a putative nationwide class (¶¶370-72)—not an "easy" task *even if* the anonymous "Borrowers" can in fact be found there.

[5]    *See* Opp. 10 ("purported disclosures that do appear in … document packets contradict … material misrepresentations made orally …—which is why Dealers go to such lengths to ensure that Borrowers do not read or understand them"); ¶160 ("Dealers conceal that [Agreements] may contradict explicit material representations made orally"); ¶225 ("On information and belief, the script often contradicts other representations made by the Dealers during the calls … to minimize the likelihood that a Borrower will change his or her mind ….").

3

*Silvester v. Selene Fin., LP*, 2019 WL 1316475, at *7 (S.D.N.Y. Mar. 21, 2019) (dismissing "information and belief" RICO allegations).

Instead, Plaintiffs argue they "need not allege a specific connection between a particular defendant and particular misrepresentations, so long as the complaint ... inform[s] each defendant of the nature of his alleged participation in the fraud." (Opp. 18, quoting *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 147 (S.D.N.Y. 2014)). Nothing in *Angermeir* suggests a RICO defendant need not itself commit predicate acts.[6] The argument is contrary to settled law that "[t]he requirements of section 1962(c) must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). *See also Sullivan v. Barclays PLC*, 2017 WL 685570, at *35 (S.D.N.Y. Feb. 21, 2017) (a complaint that "does not identify any specific defendant's participation in at least two acts of wire fraud … fails to allege a pattern of racketeering activity"). *M'Baye v. N. J. Sports Prod., Inc.*, 2007 WL 431881, at *7 (S.D.N.Y. Feb. 7, 2007) (no RICO claim absent allegations defendant "made any fraudulent representations" because plaintiff "cannot impute representations made by [separate defendant]. Under RICO, a plaintiff must satisfy the requirements as to each individual defendant.").[7]

## C.   Plaintiffs Do Not Plead EAC Misstatements or Omissions

The allegations cited as showing that EAC "misrepresented the value of the Purported Services and its role in the scheme, and … made other false and misleading statements" are not colorable. (Opp. 18). They are based on claims of unidentified "Borrowers" (¶¶204, 209, 227, 230, 232-33, 235-36) or sheer speculation (¶¶231), or merely dispute a legal conclusion[8] or

---

[6]   The *Angermeir* plaintiffs alleged a RICO scheme in which the defendants sought to intimidate them into making payments on fraudulent equipment leases by, *inter alia*, threatening and instituting frivolous "expensive long-distance litigation." 14 F. Supp. 3d at 139-40. The court required plaintiffs to "plead with particularity by setting forth separately the acts or omissions complained of by each defendant," and found plaintiffs had done so by specifying how each defendant had, *e.g.*, verified or litigated the fraudulent complaints. *Id.* at 147-48.

[7]   None of the allegations cited as demonstrating "participation" in the fraud (Opp. 18-19) shows a predicate act. Plaintiffs' reliance on an allegation that EAC "wrote the documents it requires Dealers provide to Borrowers" (*id.* 19), is particularly ironic, given Plaintiffs' argument that the *written documents are accurate*. (*See* pp. 3 & n.5, above).

[8]   Whether EAC is "legally responsible for the Dealers' misconduct" under the Credit Agreement's Holder Clause (¶229) is a legal question, not a matter of factual truth or falsity.

opinion.[9]  One reports a statement of the same facts *affirmatively pled in the FAC.*  (¶¶96, 45, 47).

Plaintiffs do not demonstrate that the "Credit Plans deliberately conceal the true cost of the credit."  (Opp. 19-20).  In response to EAC's showing there was truthful disclosure of "all material aspects of that loan" (Br. 18-19, FAC Exs. B, C), Plaintiffs make the nakedly false assertion that "the Credit Plans … do not state the finance charge, amount financed, total of payments, or total sales price."  (Opp. 20).[10]  Plaintiffs claim EAC did not disclose the total dollar amount of these figures over the life of the loan—ignoring the conceded fact that the Credit Agreements call for "monthly Minimum Payments," and indisputable corollary that total dollar amounts would depend on the rate of repayment.  (Opp. 20-21 & n.13; FAC Exs. B, C). Plaintiffs' assertion that the alleged omissions "caused them harm" (Opp. 20), does not substantiate allegations of predicate acts.  The asserted harms are not cognizable RICO injuries. (*See* Pt. I(D), below).

Plaintiffs' argument that the Credit Agreements "purport to extend revolving credit, when, in reality, they are installment loans" (Opp. 21), only confirms that their RICO claims seek to criminalize TILA.  (Br. 15-16; *see* Opp. 19).  A RICO predicate act of fraud is not established by mere adherence to a colorable interpretation of TILA implementing rules.  Nor is it shown by an argument that "[f]alsely labeling closed-end credit … does not *just* violate TILA." (Opp. 21).  Plaintiffs' reasoning—that "it causes meaningful harm to Borrowers in the form of reduced credit scores" (*id.*), shows the alleged deception <u>could not violate RICO</u>.  (*See* Pt. I(D). Plaintiffs do not respond to EAC's showing that the Credit Agreements did not offer "[s]purious [o]pen-ended [c]redit."  (Br. 16-18).  They suggest "[t]hese fact disputes cannot be resolved on a motion to dismiss," citing administrative interpretation of *TILA implementing rules*.  (Opp. 21).[11]

---

[9]    ¶228 quotes EAC querying why a disgruntled Borrower's servicer did not provide the service the Borrower paid for elsewhere, which was the basis for EAC's opinion that it was "inaccurate" to suggest that servicer provided the "same assistance."

[10]   Plaintiffs apparently concede disclosure of "grace period" and "due date of any payment."  (*See*  Br. 19-20).

[11]   *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 408 n.26 (3d Cir. 2015), is irrelevant. (Opp. 19).  The claims were based on misrepresentation of mortgage-related fees on a RESPA form to disguise

Plaintiffs' argument that "the Credit Plans deliberately obscure the identity of the lender" is patently refuted by the documents themselves.  (Opp. 22; *see* Br. 20, FAC Exs. B, C).

Plaintiffs' argument that "the language of the Credit Plans is carefully crafted to hide or obscure information that would contradict oral misrepresentations … made by the Dealers" (Opp. 22-23), fails with their untenable theory that truthful written disclosures somehow *furthered* fraud.  (*See supra* p. 3 & n.5).  "Certainly, bills and statements from a lender may be confusing or 'cryptic' but that does not rise to the level of an allegation that the Defendants willfully defrauded Plaintiffs."  *Silvester*, 2019 WL 1316475, at *8.

Plaintiffs argue that "EAC's provision of the Credit Plans to Borrowers supports Plaintiffs' RICO claims whether or not the documents were, themselves, fraudulent" (Opp. 23)— tacitly admitting that the Credit Agreements were not deceptive.  *In re Sumitomo Copper Litigation*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (cited at Opp. 23), reflects the unremarkable point that mail or wire "communications need not have contained false … information themselves."  "[A] mailing that is incident to an essential part of the scheme" only "satisfies the mailing element of the mail fraud offense."  *Schmuck v. United States*, 489 U.S. 705, 712 (1989). "[A] plaintiff still needs to allege a material misrepresentation as part of the defendants' scheme to fraud to state a violation of section 1341 or 1343."  *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 125 (2d Cir. 2018).  That "material misrepresentation" element cannot be satisfied by imputing the Dealers' alleged misrepresentations to EAC.  (*See* Pt. I(B), above.)

### D.    Allegations of "Devastating Harm" Are Irrelevant to RICO Claims

Plaintiffs purport to detail "devastating harm for Borrowers" from "[f]alling for Defendants' Scheme," insist both of them "experienced harm of all of these types," and warn that "more Borrowers are being harmed every day" (Opp.  10-11; *also id.* 7, 20-22), even though EAC did not move to dismiss the RICO claims for failure to plead harm.

---

illegal kickbacks—not technical consumer disclosure violations, and the Court did not address any dispute over whether the misrepresentations amounted to RICO predicate acts.

EAC recognizes that each named Plaintiff pled minimal out-of-pocket loss.[12]  Plaintiffs'

appeal to sympathy for "devastating harm" does nothing to validate their RICO claims because

<u>none of the asserted "harms" is cognizable RICO injury</u>.  They are unripe,[13] or consist of non-

compensable personal injury in the form of credit damage,[14] or emotional distress.[15]  This is by

no means a comment on the genuineness of Plaintiffs' alleged discomfort.  It demonstrates that

their circumstances cannot be remedied under RICO:

> Courts have repeatedly warned against attempts by plaintiffs to mold their claims
> to the RICO form even though their injuries do not fall within those intended to
> be addressed by the Act.  The alleged predicate acts of mail and wire fraud merit
> particular scrutiny lest the courts allow the RICO statute to federalize garden-
> variety state common law claims.  Courts look to Rule 9(b)'s heightened pleading
> standard in an effort to ward off specious claims.

*Silvester*, 2019 WL 1316475, at *7.

## II.    DISCLOSURES IN THE AGREEMENTS COMPEL DISMISSAL

Plaintiffs argue that the Agreements' disclosures "[d]o [n]ot [s]upport [d]ismissal"

because *Bridge* "forecloses" an argument "that Plaintiffs unreasonably relied on false or

misleading oral statements contradicted by written disclaimers in the contracts they signed."

(Opp. 14).  Plaintiffs deliberately misconceive EAC's point, which was not simply that reliance

on purported oral disclosures would have been unreasonable.  Documentary evidence of clear,

---

[12]   Williams' actual out-of-pocket payments for the "deceptive loan" amount to less than $200, and Turner's are less than $500.  (¶¶ 299, 306, 308, 343, 345, 348, 350, 356-57).

[13]   Plaintiffs speculate "harm" from "increase[d] … student loan balance and interest rate, los[t] credits for payments, and [loss] of a … opportunity to consolidate," and "delinquency or default on … loans …."  (Opp. 10).  These cannot be quantified until the loans have been paid in full or otherwise discharged.  *See D'Addario v. D'Addario*, 2018 WL 3848501, at *10 (2d Cir. Aug. 14, 2018) ("[T]he RICO statute as construed in our Circuit simply does not provide a remedy before a plaintiff has suffered reasonably ascertainable damages."), *cert. denied*, 139 S. Ct. 1331 (2019).

[14]   Plaintiffs speculate that "credit is damaged." (Opp. 10, *also* 21-22).  *But see, e.g., Bascunan v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017) ("A plaintiff bringing a civil RICO claim … cannot ... recover for personal injuries."); *Alphas Co. of N.Y. Inc. v. Hunts Point Terminal Produce Coop., Inc.*, 2017 WL 1929506, at *4 (S.D.N.Y. May 9, 2017) ("[L]osses in terms of a lower personal credit score and injury to … reputation and goodwill … are not injuries within the meaning of RICO").

[15]   Plaintiffs assert "significant emotional and psychological distress."  (Opp. 10-11).  *But see, e.g., Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) ("RICO … does not provide recovery for … emotional injuries."); *Angermeir*, 14 F. Supp. 3d at 152 (claims of "waste[d] … time and effort[,] … considerable annoyance, embarrassment, emotional distress, and mental anguish" do not "constitute[] injury under § 1964(c)").

prominent, and truthful disclosure of information allegedly concealed demonstrates that <u>there was no fraudulent omission or concealment</u>.  Plaintiffs also misstate the breadth of *Bridge*, which addressed RICO causation of injury to plaintiffs who alleged harm from misrepresentations made to, and relied upon by, a third party.  In holding that a RICO plaintiff "need not show, ... as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations," 553 U.S. at 661, *Bridge* reasoned that "[n]othing on the face" of the mail or wire fraud statutes imposes a "requirement of first-party reliance," *id.* at 648, and warned:

> [N]one of this is to say that a RICO plaintiff who alleges injury by reason of a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations. …  In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation.

*Id.* at 658 (emphasis in original).  *See, e.g.*, *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 459 (S.D.N.Y. 2014) (dismissing RICO claims where plaintiff "has not shown that any party's reliance on Lumen's alleged misrepresentations caused it injury," and rejecting as "incorrect" plaintiff's "contention that [*Bridge*] stands for the proposition that it does not have to show reliance on the alleged misrepresentations to sustain a mail or wire fraud claim").[16]

Plaintiffs also argue that the disclosures would not negate reliance because they "are not explicit disclaimers of … particular representations."  (Opp. 15).  The claim is so unsupportable that Plaintiffs make only a token—and futile—effort to articulate a difference between the disclosures and alleged misrepresentations and omissions.  (*See* Br. 11-15, 18-20, Exs. A-D). They assert that "[n]one of the documents disclose or disclaim the core falsity that the Borrowers

---

[16]   *See also Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) ("[P]laintiffs' theory of injury in most RICO mail-fraud cases will nevertheless depend on establishing that someone—whether the plaintiffs themselves or third parties—relied on the defendant's misrepresentation."); *Ritchie v. N. Leasing Sys., Inc.*, 2016 WL 1241531, at *12 (S.D.N.Y. Mar. 28, 2016) (dismissing RICO claims: "While a mail or wire fraud action need not allege first-person reliance by the plaintiff herself, it does need to show that someone—whether the plaintiffs themselves or third parties—relied on the defendant's misrepresentations. Plaintiff fails to proffer any facts suggesting that *anyone* relied on defendants' alleged fraud … , a requirement under *Bridge*."), *aff'd sub nom. Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1350 (11th Cir. 2016) ("[T]he [*Bridge*] Court was clear that its holding dismissing the need for first-party reliance on the fraud did not mean that a party can prevail without showing that someone had relied on the fraud."); *Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, 286-88 (E.D. Pa. 2016) ("the holding in *Bridge* is not as broad as Plaintiffs read it.").

will obtain loan forgiveness through buying the Purported Services" (Opp. 15), which is irreconcilable with, *inter alia*, their signed acknowledgments, in the Service Agreements, that they "have not been advised ... to forego a student loan payment" (Ex. A at 8, Ex. C at 6; *see also* Br. 11-12). Their argument that the documents fail to disclose "the fundamental worthlessness of the Purported Services" (Opp. 16) also fails. Plaintiffs claim the Dealers set "outrageous prices" for services available elsewhere for free. (*Id.* 5). Each Service Agreement prominently advises that Plaintiffs can "try to complete [their] applications and consolidate [their] loans [] without paying anyone a fee." (Ex. A at 1, 7 §10; Ex. C at 1, 4 §2; *see* Br. 2, 13).

Plaintiffs purport to make a third argument—that the disclosures do not "bear on materiality" because "contractual disclaimers of reliance on prior misrepresentations do not render those misrepresentations immaterial under the criminal mail and wire fraud statutes." (Opp. 14-15, quoting *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017)). *Weaver* only holds that a boilerplate contractual merger clause does not foreclose indictments for criminal mail and wire fraud based on "salespeople routinely l[ying] to customers in order to convince them to purchase the machines by promising unrealistic profits and making other false claims." 860 F.3d at 92. *Weaver* is inapposite. This case involves affirmative disclosures, not a merger clause.

## III.     PLAINTIFFS DO NOT PLEAD RICO CONTINUITY

Plaintiffs claim the FAC demonstrates open-ended continuity through allegations that "Defendants commit the same acts of fraud many times, and … EAC continues to issue new Credit Plans to new Borrowers and collect on existing Plans." (Opp. 23-24). But "conclusory allegations that other, unidentified … customers were affected by [an] alleged … scheme" are "insufficient to allege an open-ended pattern of racketeering activity." *Higgins v. Farr Fin. Inc.*, 2009 WL 3517597, at *3 (N.D. Cal. Oct. 26, 2009). The "names[,] … dates [and] other details of transactions" with customers other than plaintiff may "are necessary to identify a violation of RICO." *Goren v. New Vision Int'l, Inc.*, 561 F.3d 721, 729 (7th Cir. 1998) (no pattern where

plaintiff "alleged merely that the company did the same thing" to other customers).[17]   They also argue that "the nature of Defendants' fraud … inherently lends itself to a finding of open-ended continuity."  (Opp. 24).  "[F]raud … [is] not … 'inherently unlawful' in the RICO continuity context."  *Int'l Bhd. of Teamsters v. Carey*, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004), *aff'd* 124 Fed. Appx. 41 (2d Cir. 2005).   "While embezzlement, extortion, bribery, and money laundering are in pursuit of inherently unlawful goals, fraud is not."  *WWE, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 516 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

Plaintiffs do not dispute that predicate acts specific to themselves form a closed-ended pattern lasting no longer than 19 months, or that a pattern shorter than two years is insufficient in the Second Circuit.  (Br. 23).  Instead, they claim the FAC pleads a pattern of "nearly four years," encompassing "tens of thousands of other Borrowers."  (Opp. 24).  The inclusion of "other Borrowers" is fatal to closed-ended continuity.[18]  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 301 (7th Cir. 1998) (finding no closed-ended continuity: "conclusory allegation that Defendants had a pattern of … mail and wire[ fraud] that persisted for over two years in hundreds of transactions, without any specifics, fails to meet the particularity requirements of Rule 9(b), and simply is insufficient to satisfy Plaintiffs' pleading burden").

IV.     **PLAINTIFFS DO NOT PLEAD A RICO CONSPIRACY**

The Opposition contributes nothing of substance to this issue.  (*See* Opp. 25).

## CONCLUSION

For all of the foregoing reasons, the RICO claims should be dismissed with prejudice.

---

[17]   *See also, e.g.*, *Petri v. Gatlin*, 997 F. Supp. 956, 984-85 (N.D. Ill. 1997) ("[P]laintiffs may very well be able to show that the defendants engaged in a 'pattern' of racketeering activity, but they cannot do so by relying on undifferentiated allegations that scores of consumers were defrauded ….").

[18]   *E.g.*, the period allegedly begins with phone call to an unidentified borrower from a Dealer not named as a defendant and not alleged to be affiliated with EAC, and ends with "collection efforts on Credit Plans" directed at unidentified Borrowers.  (Opp. 24, ¶¶103, 237).

Dated:  May 6, 2019                  Respectfully submitted.

                                     JOSEPH HAGE AARONSON LLC

                                     By:____/s/ Gregory P. Joseph_____
                                         Gregory P. Joseph (gjoseph@jha.com)
                                         Sandra M. Lipsman (slipsman@jha.com)
                                         Gila S. Singer (gsinger@jha.com)
                                     485 Lexington Avenue 30th Floor
                                     New York, NY 10027
                                     Phone:  (212) 407-1200
                                     Fax:  (212) 407-1280

                                     *Counsel for Defendant Equitable Acceptance Corporation*