WRITER'S DIRECT DIAL NO.
**(212) 849-7156**

WRITER'S EMAIL ADDRESS
**jonoblak@quinnemanuel.com**

May 11, 2020

The Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street, Room 2270
New York, NY 10007

Re: *Williams et al. v. Equitable Acceptance Corporation, et al.*, 18-CV-07537:
<u>Plaintiffs' Proposed Second Amended Complaint</u>

Plaintiffs write pursuant to Rule 2.B of your Honor's Individual Practices and Local Rule 37.2, seeking leave to file a Second Amended Complaint ("SAC")[1] that asserts claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and for aiding and abetting fraudulent inducement under New York common law against Jeffrey D. Henn ("Henn"), the CEO of Equitable Acceptance Corporation ("EAC"), and to assert fraudulent transfer claims against EAC, Henn, and Teresa Henn, Henn's wife, pursuant to N.Y. Debtor & Creditor Law § 276 and Minnesota Uniform Fraudulent Transfer Act § 513.44(a)(1).  The claims are the product of discovery obtained within the last six months, during which Plaintiffs were largely focused on resolving this matter.  Given the generous leave to amend standard, the Court's March 7, 2020 Order that Plaintiffs' prior RICO claims are adequately pled, and in order to promote the efficient and the prompt resolution of the matter, Plaintiffs respectfully request that the Court grant leave to amend without motion practice.

Plaintiffs seek leave to amend pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure,[2] which govern amendments and joinder of parties, respectively.  Courts in this Circuit routinely permit amendment under both Rules pursuant to the "same standard of liberality."  *Davidowitz v. Patridge*, 2010 WL 1779279, at *2 (S.D.N.Y. Apr. 23, 2010) (Buchwald, J.) ("Motions under Rule 21 are treated with the same standard of liberality applicable to motions under Rule 15 . . . ."); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (The Second Circuit "hew[s] to the liberal standard set forth in Rule 15.").  Leave is particularly appropriate where merely amplifying existing pleadings.  *See Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) (reversing denial of leave to amend where the amendments were "variations on the original theme"); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 153 (S.D.N.Y. 2012) (granting amendment based on discovery findings).

---

[1] Plaintiffs do not believe the SAC's new allegations are covered by the protective order in this matter.  However, because certain allegations are based on documents that have been designated as "Confidential," and in an abundance of caution, Plaintiffs are seeking EAC's consent before filing the SAC on the docket.  Subject to EAC's position and the Court's direction, Plaintiffs will either file the proposed SAC or seek leave to file it under seal.

[2] Rule 15 provides that "[t]he court should freely give" leave for a party to amend its pleading "when justice so requires."  Fed. Civ. P. 15(a)(2).  When amendment will add or remove a party, Rule 21 governs, under which "a court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.

EAC cannot show that the SAC would cause it prejudice, particularly as to claims not asserted against it. The SAC will not require EAC to "expend significant additional resources to conduct discovery and prepare for trial," and the litigation would not be "significantly delay[ed]." *Cesari S.r.L. v. Peju Province Winery L.P.*, 2020 WL 1126833, at *3 (S.D.N.Y. Feb. 24, 2020) (Buchwald, J.) (citing cases to show that "the Second Circuit regularly grant[s] leave to amend" up to 4 years after initial filing, "in the absence of undue prejudice or bad faith"). The RICO and fraudulent inducement claims will not alter the scope of discovery, as the factual basis for Henn's personal role in the Scheme overlaps with his role as EAC's CEO, and because that discovery is well underway. The fraudulent transfer claims involve limited and also overlapping discovery that can be conducted on the same timeline.

EAC cannot demonstrate that these amendments are so "futile" that the Court should decline to allow amendment, because these well-supported claims can easily withstand a motion to dismiss for failure to state a claim. *See Lucente v. Int'l Business Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (instances where an amendment would be futile include a defendant protected by qualified immunity, time-barred claims, or the failure to plead adequate allegations). The Court already held that Plaintiffs adequately alleged a RICO scheme and predicate acts by EAC and the Dealers, and the proposed SAC is based on the same theory, and the same operative facts—amplified by additional details. Discovery has demonstrated that Henn personally knew of and intentionally participated in the same fraudulent Scheme. As Your Honor held, "[a] complaint alleging mail and wire fraud as predicate acts of a RICO claim needs to plead only (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participating in the scheme, and (3) the use of the interstate mails or transmission facilities in furtherance of the scheme." *See* Dkt. No. 73, at 22 (quoting *S.Q.F.K.C., Inc. V. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)). "[P]laintiffs need not allege that each defendant itself made a misrepresentation as long as they allege sufficient facts showing each defendant's knowing or intentional participation in the alleged scheme to defraud." *Id.* Plaintiffs have also adequately alleged that Henn "knew about and substantially assisted" the fraudulent inducement by EAC and the Dealers. *See McBride v. KPMG Int'l*, 135 A.D.3d 576, 578 (1st Dep't 2016).

As the proposed SAC details, Henn knew of and managed EAC's role in this Scheme, and coordinated the Dealers' participation in the Scheme. (SAC ¶ 342.) Henn recruited Dealers and coordinated with intermediaries for recruitment. (SAC ¶¶ 333-34.) Prospective Dealers' applications, which included the Dealer's history of consumer complaints, were often reviewed by Henn. (SAC ¶ 347.) Once engaged in the Scheme, Dealers attended in-person meetings with EAC and Henn, including a mandatory in-person October 2017 meeting in EAC's Minneapolis Headquarters. (SAC ¶ 355.) Dealers took direction from EAC and Henn about the nature of the Services that Dealers sold to Borrowers, and on what terms. (SAC ¶¶ 356-62.) Henn reviewed complaints from Borrowers as well as communications from third parties, including the Better Business Bureau, EAC's vendors, and other regulators, including formal investigations by multiple states' attorneys general, warning that the Dealers' communications and the Credit Plans were fraudulent and deceptive. (SAC ¶¶ 285-305.) Despite these early and consistent warnings of the harm and illegality, Henn continued to direct both the conduct of EAC and the Dealers in the Scheme. (SAC ¶ 306.) And Henn's personal finances were intermingled with the company: he appears to have offered his individual creditworthiness to support EAC's effort to obtain financing, and he then sought to hide his assets from creditors when regulators circled in on the company. (SAC ¶¶ 399-400.) These extensive allegations are adequate to plead both

Henn's knowledge of and participation in the Scheme and his aiding and abetting of fraudulent inducement, and these claims present no burden or prejudice to EAC.  (SAC ¶¶ 309-97, 598-604.)

The SAC also alleges that Henn transferred assets, including his 50% stake in EAC and five parcels of land, into personal trusts co-owned by him and Teresa Henn, just three days after learning that the Minnesota Attorney General was investigating EAC, and when Henn also knew the New York Attorney General was looking into the Scheme and specific Dealers.  (SAC ¶¶ 401-04.)  These transfers bear all the "badges of fraud" needed to demonstrate an actual intent to hinder, delay, or defraud creditors, including the putative class of Borrowers, as barred under New York and Minnesota law.  *See* N.Y. Debt. & Cred. Law § 276; Minn. Stat. Ann. § 513.44(a)(1); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005) (permitting creditors to demonstrate the presence of "badges of fraud" to show "actual intent to hinder, delay, or defraud creditors").  Henn's secreting his assets into trusts plead adequate badges of fraud to survive a motion to dismiss.  The claims seek relief against the Henns, as Co-Trustees of the trusts, and EAC has no basis to claim prejudice as to claims asserted against separate parties.

The SAC further alleges that EAC obtained liquidity from commercial lenders to fund the Scheme and access its proceeds, including by using the Credit Plans as collateral.  (SAC ¶¶ 405-08.)  EAC continues to transfer the profits of the Scheme to these lenders, also with actual intent to hinder, delay or defraud the putative class of Borrowers, (SAC ¶ 409), and EAC should be prohibited from continuing such transfers.  A "Ponzi scheme presumption" can be applied to these fraudulent transfer claims, because the existence of the scheme "demonstrates 'actual intent' as matter of law because 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.'"  *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 8 (S.D.N.Y. 2007) (citation omitted).  Even if the Court elects not to extend the Ponzi scheme presumption, these claims would still survive a motion to dismiss because EAC's payments of the profits of its Scheme also show badges of fraud including "the transferor's knowledge of the creditor's claim and the inability to pay it," *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dep't 1999), and "the existence . . . of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors," and "the general chronology of the events and transactions under inquiry," *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).  The SAC adequately pleads these transfers were made with intent to hinder, delay, or defraud creditors.

To the extent that EAC disagrees and believes these claims cannot survive a motion to dismiss, Plaintiffs respectfully propose that the most efficient way to test these claims is for EAC and the Henns to make motions to dismiss after the SAC is filed.  Even if the parties litigate amendment now, the Henns would remain entitled to move to dismiss claims after they appear with their own counsel, duplicating briefing and the effort of the Court to resolve the same issues.  Instead, this motion practice could be consolidated with Plaintiffs' imminent cross-motion for a preliminary injunction, which will also address the claims' viability.  Plaintiffs understand that EAC continues to collect approximately $500,000 per month from thousands of class members, all or nearly all of which is immediately transferred out of reach of the Borrowers.  Plaintiffs believe that expedited relief is needed to cease all collections and prevent EAC from using the borrowers paying its fraudulent debt in order to stay afloat.  We therefore request that the Court grant Plaintiffs leave to file the SAC and set a briefing schedule for Plaintiffs' anticipated preliminary injunction motion and, if necessary, any cross-motion to dismiss amended claims.

Sincerely,

Jonathan B. Oblak

cc:		All Counsel Of Record (via ECF)