# AMINI LLC

Avery Samet  
MEMBER NY BAR

212.497.8239  
asamet@aminillc.com

July 21, 2020

**VIA ECF**

Honorable Naomi Reice Buchwald  
United States District Judge  
United States Courthouse  
500 Pearl Street, Room 2270  
New York, NY 10007

Re:   *Williams, et al. v. Equitable Acceptance Corp.*, **No. 18-CV-07537**

Dear Judge Buchwald:

On behalf of Defendant Equitable Acceptance Corporation ("EAC"), we write to outline the substantive arguments advanced in EAC's motion to dismiss, which is being filed concurrently herewith. For the reasons below, as detailed in the Memorandum of Law in Support of EAC's Motion to Dismiss (the "Motion"), Claim 14 of the Second Amended Complaint ("SAC"), alleging actual fraudulent conveyance against EAC, should be dismissed for failure to state a claim under Rule 12(b)(6) and lack of personal jurisdiction under Rule 12(b)(2).

**I.   Claim 14 Fails to State a Claim for Relief**

Claim 14 is asserted under Minnesota Statutes Section 513.44(a)(1) and New York Debtor and Creditor Law ("NYDCL") Section 273(a)(1). The NYDCL provides that "[A] claim for relief under this article is governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred." NYDCL § 279(b). EAC is a Minnesota corporation, and was located at all times in Minnetonka, Minnesota. (SAC ¶ 20.)

   A.   <u>The Claim Alleges No Transfers with Particularity</u>

Minnesota applies a transfer-by-transfer analysis to claims for fraudulent transfer. *Finn v. Alliance Bank*, 860 N.W. 638, 646-47 (Minn. 2015). Yet, that analysis is impossible to apply here, as Plaintiffs have not identified any transfers made by EAC with fraudulent intent. Rather, Plaintiffs allege that EAC generally pays its secured lenders every month (SAC ¶ 409) and that some of those "obligations" may be secured by credit plans or may include unspecified "profits" of what Plaintiffs describe as a scheme to defraud student loan borrowers (*id*. ¶ 648).

Under Rule 9(b), which applies to actual fraudulent transfer claims, Plaintiffs must allege the transfers they seek to avoid with specificity, including the amount, date, recipient and circumstances of each transfer that they claim was fraudulent. *See In re M. Fabrikant & Sons, Inc.,* 394 B.R. 721, 734 (Bankr. S.D.N.Y. 2008), *aff'd In re M. Fabrikant & Sons, Inc.,* 541 Fed. App'x 55, 58 (2d Cir. 2013) ("The Trustee has not identified the dates, amounts, and other relevant

Hon. Naomi Reice Buchwald
July 21, 2020
Page 2

circumstances of the particular transfers that it contends were made with the actual intent to defraud creditors. Accordingly, these claims, to the extent they assert intentional fraud, fail for lack of specificity."). Because the SAC does not make these allegations, it should be dismissed.

Finally, Plaintiffs allege the general existence of transfers only upon information and belief, but do not set forth their basis for such belief. *See United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017). As described in the Motion, Courts routinely dismiss fraudulent transfer claims where the *transfers themselves* are pleaded upon information and belief. *See*, *e.g.*, *Kranz v. Koenig*, 240 F.R.D. 453, 456 (D. Minn. 2007).

  B. <u>The Claim Alleges No Fraudulent Intent With Respect to Any Transfer</u>

    1. *The Claim Alleges No Badge of Fraud Required By the Statute*

Under Minnesota law, Plaintiffs must allege badges of fraud with respect to each and every transfer that they claim was fraudulent. Under Minnesota Statutes § 513.44(b), those badges include (a) whether the transfers were made to insiders, (b) whether they were made without consideration, and (c) whether they substantially transferred all of the debtor's assets. Plaintiffs fail to allege a *single* badge of fraud enumerated in the statute with respect to any transfer. More importantly, the SAC pleads facts rebutting any fraudulent intent, as it alleges that EAC made transfers (a) to "commercial lenders" (SAC ¶ 406); (b) in respect of EAC's "obligations" to those lenders (*id.* ¶ 409); and (c) continuously for at least five years (*id.* ¶ 407, 409).

    2. *There is No "Ponzi Scheme Presumption," No Ponzi Scheme Allegation and No Allegation that the Transfers Themselves Furthered Any Fraud*

In separate filings, Plaintiffs have indicated that a purported "Ponzi scheme" presumption exempts them from pleading any of the above specifics about the allegedly fraudulent transfers (*see* Doc. Nos. 86, 110). This position, although not appearing in the SAC, fails for at least three reasons.

First, Minnesota has rejected any such Ponzi scheme presumption for fraudulent transfers, and instead requires that plaintiffs must establish actual fraud with respect to individual transactions. *Finn*, 860 N.W. at 646-47 (dismissing fraudulent transfer claim against lenders to avoid transfers made by admitted Ponzi schemer); *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225 (8th Cir. 2018) (same).

Second, even if Minnesota had such a presumption, Plaintiffs do not allege that EAC conducted a Ponzi scheme. Instead, the SAC alleges that EAC—a 65-year old business, with multiple business lines—extended real loans to real borrowers who purchased real services from real dealers. (*See* SAC ¶¶ 63-209.) Plaintiffs take issue with the value of those services, as well as alleged misrepresentations made by dealers in signing borrowers up for such services, but they have not alleged that "money contributed by later investors [was] used to pay artificially high dividends to the original investors, creating an illusion of profitability, thus attracting new investors." *See In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 157, n.2 (2d Cir. 2006).

Hon. Naomi Reice Buchwald
July 21, 2020
Page 3

Third, even if Minnesota had such a presumption, and even if the SAC had alleged the existence of such a scheme, Plaintiffs fail to allege that the transfers *to* EAC's lenders furthered any fraudulent activity. While it vaguely alleges that the *loans* from EAC's lenders kept EAC in business (SAC ¶408), the SAC does not allege that EAC's outgoing payments on its obligations to the lenders furthered any fraud. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005) ("Fraudulent conveyance law is basically concerned with transfers that 'hinder, delay or defraud' creditors; it is not ordinarily concerned with how such debts were created.").

C. The Claim Fails to Identify Cognizable Relief

The claim provides no specificity as to what transfers it seeks to avoid and from whom. "Voiding" transfers previously made by EAC to others would be a purely advisory opinion. Voiding portions of transfers "paid using profits of the Scheme" (SAC ¶ 648) hardly provides a basis on which to award specific relief.

II. The SAC Provides No for Personal Jurisdiction Over Claim 14

When relying upon specific personal jurisdiction—as Plaintiffs do here—Plaintiffs must establish specific personal jurisdiction over each and every claim. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018). Plaintiffs allege that EAC, which is headquartered in Minnesota, transferred funds on its corporate obligations to lenders also located in Minnesota. (SAC ¶ 407). Plaintiffs allege only economic injury from these transfers, which is insufficient to establish specific personal jurisdiction under CPLR 302(a)(3). *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013).

For these reasons, EAC respectfully submits that Claim 14 should be dismissed, along with such other and further relief as this Court deems just and proper.

Respectfully submitted,

   *s/ Avery Samet*

Avery Samet

cc:    All counsel of record (*via ECF*)